UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————— x

THEODORE JENKINS,

                     Plaintiff,

          against                                          09 Civ. 499 (CM)

NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES,

                     Defendant.

———————————————————————————— x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/7/09__

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J.

### FACTS

In August 2007, Theodore Jenkins sought permanent housing from the New York City

Department of Homeless Services ("DHS").  Jenkins underwent a psychiatric evaluation at the

Bellevue Shelter on August 20, 2007.  (Compl. Ex. A ("Greene Letter") 1).  Jenkins was

diagnosed with schizophrenia and placed in the Mental Health/Chemical Abuse ("MICA")

program at the Fort Washington shelter.  (Greene Letter 1).  Jenkins is no longer in the shelter

system and is now homeless.  (Greene Letter 1).

Jenkins brings this lawsuit seeking placement in the general shelter population. (Greene

Letter 4).  He claims that he is not schizophrenic.  (Greene Letter 4).  Although the record is not

clear, it appears that Jenkins voluntarily left the shelter system because he did not want to be

assigned to the MICA facility.  (Compl. 3) ("Claimant declined the offer of transfer to another

1

MICA facility"), (Greene Letter 1) ("Due to his dissatisfaction with this placement, he is no longer in the shelter system at all").

On June 9, 2008 Ashley Greene, an attorney with the Mental Hygiene Legal Services, wrote DHS on behalf of Jenkins, Greene indicated DHS would reconsider Jenkins' placement if he underwent a second psychiatric evaluation with the doctor of his choice. (Greene Letter 1). Jenkins objects to undergoing any new psychiatric evaluation, he demands to be admitted to the general shelter population, with the goal of obtaining permanent housing. (Greene Letter 1, 4). There is no evidence that Jenkins has submitted to a second psychiatric evaluation, or that DHS has reconsidered its diagnosis and assigned him to the general shelter population.  Mr. Jenkins has been homeless since January 2008.  (Compl. 2).

On October 3, 2008, Mr. Jenkins filed a *pro se* complaint against DHS in this Court. (Compl. 1).  The Defendant moved to dismiss the complaint on March 17, 2009, and the parties held an initial conference on March 20, 2009.  Mr. Jenkins filed a response on March 23, 2009, and DHS replied on April 6, 2009.

## STANDARD OF REVIEW

The Defendant moves to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), as well as a lack of subject matter jurisdiction on the Article 78 claim under Federal Rule of Civil Procedure 12(b)(1). Because Jenkins is a *pro se* party, his pleadings must be construed liberally and interpreted to make the strongest arguments they suggest. Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). In liberally construing the plaintiff's pleadings the Court should make "reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training".  Id. at 639 (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir 1983)).

2

In evaluating a 12(b)(6) motion, a complaint that only raises "the mere possibility of misconduct" does not establish that the plaintiff is entitled to relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  The plaintiff must establish that the allegations are pushed "across the line from conceivable to plausible".  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).  "Specific facts are not necessary" but the complaint must give the defendant fair notice of the plaintiff's claim.  Erickson v. Padrus, 551 U.S. 89, 89 (2007).

A *pro se* complaint should be treated more liberally than a complaint drafted by lawyers. Erickson, 551 U.S. at 89.  If a liberal reading of the *pro se* pleadings indicate a valid claim might be stated, and could be cured by better pleading, leave to amend the complaint should be granted. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).  However, this liberal interpretation "cannot be used to cure a complaint that consists merely of broad generalizations, sweeping castigations, and unfounded conclusions, but not specific facts from which an actual deprivation of constitutional rights may be inferred".  Locicero, 419 F. Supp 2d. at 525 (internal citations and quotations omitted).  Therefore, if a liberal reading of a *pro se* complaint reveals a substantive lack of a cause of action, dismissal is appropriate.  Cuoco, 222 F.3d at 112.

In evaluating the 12(b)(1) motion, the Plaintiff must establish federal question jurisdiction pursuant to 28 U.S.C. §1331 because the parties are not diverse.  Federal question jurisdiction is most commonly exercised in cases in which federal legislation creates a cause of action.  Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 807, 808 (1986).  In addition, federal-question jurisdiction extends to cases "where the vindication of a right under state law necessarily turned on some construction of federal law."  Dow, 478 U.S. at 808 (quoting Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 8 (1983)).

## ISSUES

**Is the fact that DHS is not a suable entity grounds for dismissal of the complaint?**

The Defendant argues that the DHS, as a City agency, has not been authorized as a suable entity under the New York City Charter. Mot. to Dismiss 13. The Defendant is "clearly correct" and "the overwhelming body of authority holds that [a city agency] is not a suable entity". Renelique v. Doe, No. 99 Civ. 10425, 2003 WL 23023771, at *6 (S.D.N.Y. Dec. 29, 2003); New York City Charter Ch. 17 § 396.

However, the issue is whether this failure to plead the correct party is an example of an "inadvertent forfeiture of important rights because of [his] lack of legal training" that should be avoided by granting a *pro se* plaintiff leave to amend his complaint. Abbas, 480 F.3d at 639. Granting leave to amend the complaint to name the proper party should only be granted if the amended complaint would survive a motion to dismiss and the amendment would not be futile. Walker v. New York City Dep't of Corrections, No. 01 Civ. 1116, 2008 WL 4974425, at *7 (S.D.N.Y. Nov. 19, 2008).

In arguing that a city agency is not suable, the Defendant cites to Renelique, in which the court dismissed a *pro se* case after finding that the Department of Corrections ("DOC") – the named defendant – was not a suable entity. 2003 WL 23023771, at *7. However, Renelique does not stand for the proposition that a case should be dismissed with prejudice if the wrong municipal entity is sued. Although the court determined the DOC was not a suable entity, it evaluated the motion for summary judgment and the potential liability of the City as if it were named as the defendant. Id. at *6-7. Summary judgment dismissing the complaint was granted, not because the wrong entity was sued, but because there was no evidence of a City policy that caused the plaintiff's injury. Id. at *12-3. The court did not address the possibility of granting

4

leave to amend the complaint to name the proper defendant, although in light of the court's ruling on the merits, such an amendment would have been futile.

In Walker v. New York City Department of Corrections, by contrast the court specifically addressed the failure of a *pro se* plaintiff to properly plead the City of New York and concluded that the plaintiff should be granted leave to amend the complaint to name the correct defendant unless granting leave to amend would be futile. No. 01 Civ. 1116, 2008 WL 4974425, at *7 (S.D.N.Y. Nov. 19, 2008). In Walker the plaintiff was acting *pro se* when she initially filed the complaint and named DOC as the defendant. 2008 WL 4974425, at *7. After filing the complaint Walker retained counsel and in response to DOC's motion to dismiss requested leave to amend the complaint and substitute the City of New York as the defendant. 2008 WL 4974425, at *7. In evaluating the motion the court noted that if the amended pleading would not survive a motion to dismiss it would be futile to grant leave to amend the complaint. Id. at *7 (citing Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002)).

In this case, although DHS is not a suable entity, it would be inappropriate to dismiss the complaint based solely on the technical defect of a *pro se* complaint[1]. Allowing Jenkins to amend his complaint to name the City of New York as the proper defendant would constitute a reasonable accommodation for a *pro se* plaintiff. However, as the court did in both Renelique and Walker this Court should evaluate whether or not granting leave to amend the complaint would be futile. In doing so the Court should evaluate the sufficiency of the Plaintiff's claims, assuming the City was properly named as the defendant.

**Has the Plaintiff stated a claim upon which relief can be granted?**

Jenkins' pleadings do not assert formal claims and are filled with disconnected facts and quotations from various federal statutes. The complaint, amplified by Jenkins' response to the

[1] The Court notes that many lawyers make the same mistake.

5

motion, could be read to include the following claims: an Eighth Amendment claim of cruel and unusual punishment, a procedural due process claim for deprivation of a property interest, a procedural due process claim for deprivation of a liberty interest (also known as a "stigma-plus" claim), a claim under the Americans with Disabilities Act, a claim under the Fair Housing Act, and a challenge to DHS's diagnosis under Article 78 of the New York Civil Practice Law and Rules.

### Eighth Amendment

Jenkins' complaint alleges, "Housing people permanently under these conditions amounts to 'cruel and unusual treatment'". (Compl. 1). A liberal reading of this passage could suggest an Eighth Amendment claim of cruel and unusual punishment. However, because Jenkins was not being punished for a crime or civil offense, he has no recourse under the Eighth Amendment. See Austin v. U.S., 509 U.S. 602, 609 (1993).

Although the Eighth Amendment has been occasionally described as protecting a right "to be free from cruel and unusual treatment," this description has occurred only in the context of prisoners claiming abuse at the hands of corrections officers. See eg. Moulier v. Moss, 40 Fed.Appx. 648 (2d Cir. 2002) (emphasis added). The Supreme Court has held that the Eighth Amendment's protections apply only to criminal and certain civil punishment imposed by the government. Austin, 509 U.S. at 609, 621.

The replacement of the word "punishment" with "treatment" in his complaint was not a mere technical error or stylistic choice by Jenkins, but accurately reflects that Jenkins has been charged with no crime or civil violation and subjected to no punishment. The Plaintiff has stated no claim for which relief could be granted under the Eighth Amendment.

**Due Process Clause of the Fourteenth Amendment**

    **A) Deprivation of Property**

    The Plaintiff has no claim for deprivation of property without due process because he

does not have a property right to placement in a particular type of shelter under New York law.

See Gomez v. Toledo, 446 U.S. 635, 640 (1980).

    The Supreme Court has ruled that procedural due process protection applies only to rights

protected under state law.

> The procedural component of the Due Process Clause does not protect everything
> that might be described as a "benefit": "To have a property interest in a benefit, a
> person clearly must have more than an abstract need or desire" and "more than a
> unilateral expectation of it. He must, instead, have a legitimate claim of
> entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577
> (1972). Such entitlements are, " 'of course, ... not created by the Constitution.
> Rather, they are created and their dimensions are defined by existing rules or
> understandings that stem from an independent source such as state law.' "

Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  If state law gives government

officials discretion to grant or deny a benefit, it is not a protected property interest protected by

the Due Process Clause.  Castle Rock, 545 U.S. at 756.

    A string of cases dating back to 1979 establishes a general right to shelter in New York,

rooted in the state's constitution.  Callahan v. Carey, 762 N.Y.S.2d 349, 351 (App. Div. 1 Dept.

2003).  However, the right to shelter is not a "boundless...entitlement" and may be subject to

eligibility requirements and other limitations.  Callahan, 762 N.Y.S.2d at 351.  The

implementing directive promulgated by the New York State Office of Temporary and Disability

Assistance makes it clear that broad discretion is given to local authorities in assigning the

homeless to shelters.  94 ADM-20(V)(D)(3).  The directive explicitly states, "Homeless persons

do not have the right to choose their own temporary placements."  Id.  Jenkins was assigned

7

shelter through the established rules and procedures of DHS. He was, therefore, not deprived of any property protected under New York law.

The Supreme Court has not recognized Plaintiff's assertion that the United States Constitution guarantees everyone a right to permanent housing. (Compl. 1), Lindsey v. Normet, 405 U.S. 56, 74 (1972). Furthermore, even if such a right had been recognized it would not be relevant to a procedural due process argument because state law, not the Constitution, is the source of protected rights. Castle Rock, 545 U.S. at 756.

## B) Deprivation of Liberty – "Stigma Plus"

Although Jenkins does not have a protected interest in assignment to a particular shelter, Defendant infers that Jenkins might be arguing that he has a liberty interest in protecting his reputation from stigmatization[2]. Mot. to Dismiss 8-9. However, because DHS has discretion in assignment of housing facilities, Jenkins cannot establish that he was subject to a state-imposed burden sufficient to satisfy a stigma-plus claim. Universal Sanitation Corp. v. Trade Waste Comm'n of New York, 940 F. Supp. 656, 662 (S.D.N.Y. 1996).

The Second Circuit has described the elements required for an allegation of stigmatization to rise to a constitutional claim;

a "stigma plus" claim requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden ... in addition to the stigmatizing statement.

Valez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005). Jenkins' complaint, and the attached letter on his behalf, could be read to allege that a diagnosis of schizophrenia is a

---

[2] As the defendant notes, the complaint does not explicitly raise the issue of stigma. Mot. to Dismiss 8. It is not entirely without basis, however, given that the plaintiff makes numerous references to the "hardship" caused by his assignment to the MICA shelter. (Compl. 2, 3). Although evaluating this claim seems to push the limits of the liberal interpretation afforded to *pro se* complaints, it seems appropriate to evaluate the claim in this manner since the defendant suggested that it might be so read.

8

statement injurious to his reputation, is capable of being proven false and imposed upon him the burden of being denied entry to the a non-MICA shelter.

Although DHS did not publicly disclose Jenkins' diagnosis, the potential for public disclosure is sufficient to meet the public disclosure requirement of a stigma-plus claim. Brandt v. Board of Co-op. Educational Services, 820 F.2d 41, 42-3 (2d. Cir. 1987).

The Second Circuit found, in Donato v. Plainview-Old Bethpage Central School District, that the public disclosure requirement was satisfied when stigmatizing statements were placed in a personnel file of a terminated employee and were likely to be discovered by future employers. 96 F.3d 623, 631 (2d Cir. 1996). Similarly, in Brandt v. Board of Co-op. Educational Services allegations of sexual misconduct by a substitute teacher were placed in his personnel file and he was fired. 820 F.2d 41, 42-3 (2d. Cir. 1987). The district court granted the defendant's motion for summary judgment because the statements were not actually disclosed. Id. at 45. In reversing, the Second Circuit held the plaintiff did not have to wait until the information was disclosed to a potential employer and suffer harm before bringing suit. Id. The Second Circuit also noted that even though the plaintiff has the power over disclosure of his personnel file, if he chooses to keep it confidential form future employers he would be forced to limit his job opportunities. Id.

The fact that the City has not disclosed Jenkins' diagnosis does not on its face bar a stigma plus claim. Donato, 96 F.3d at 631. Jenkins' situation appears similar to that of the plaintiff in Brandt, who could choose to keep the information private but only at a cost. Just as Brandt might be limited in his employment options by refusing to allow access to his personnel file, it is possible that Jenkins may be denied various opportunities if he does not disclose his

residence or medical history. Thus, at this stage, Jenkins' stigma-plus claim cannot be dismissed because of a lack of public disclosure.

However, Jenkins states no claim for stigma plus because the denial of assignment to his preferred shelter is a discretionary agency decision, and so is not a tangible and material state-imposed burden on the plaintiff. Universal Sanitation Corp. v. Trade Waste Comm'n of New York, 940 F. Supp. 656, 662 (S.D.N.Y. 1996).

To support their contention that no tangible and material state burden has been imposed, the Defendant cites Doe v. Department of Public Safety ex rel. Lee, 271 F.3d 38 (2d Cir. 2001) rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003), in which the Second Circuit extensively reviewed the plus requirement of the "stigma plus" test. In Doe the court sought to determine if Connecticut's "Megan's Law," which made public the names and addresses of convicted sex offenders, deprived those on the list of a due process liberty right under the "stigma plus" test. Doe, 271 F.3d at 47.

Drawing on the Supreme Court's decision in Paul v. Davis, 424 U.S. 693, 711 (1976), the Second Circuit reasoned, that the purpose of the "plus" factor was to prevent traditional state law tort claims of defamation from becoming constitutional claims just because the actor was acting under the color of state law. Doe, 271 F.3d at 53. There is no requirement that the "requisite tangible interest or burden. . . meet some threshold of substantiality or that it must implicate a certain kind of interest, but rather it must at least entail some non-trivial state involvement that removes the plaintiff's complaint from the realm of traditional state-law defamation". Id. at 54-55. The court found that the reporting and registration requirements of the Connecticut law which included criminal penalties for non-compliance were governmental acts that altered the plaintiff's legal status and thus satisfied as a "plus" factor. Id. at 56.

In this case, Jenkins has no right to placement in a particular shelter, and the DHS has discretion in his assignment to a particular housing unit. 94 ADM-20(V)(D)(3). Although Jenkins could argue he is burdened by his assignment to the MICA facility, where agency discretion exists there is no right or status implicated that satisfies the "plus" factor requirement of the stigma plus test. Universal Sanitation Corp., 940 F. Supp. at 662. Thus, the Plaintiff has no liberty interest that is implicated and has no claim under the Due Process Clause.

In any event, even if the court were to find a protected property or liberty interest, the Plaintiff's potential due process claim would have to be dismissed if the Plaintiff was afforded adequate post-deprivation remedies. Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 464-5 (2d Cir. 2006). Jenkins had two post deprivation remedies that satisfy due process requirements. The New York Administrative Code provides for a hearing to challenge his placement. 18 N.Y.C.R.R. § 358-3.1. DHS also gave Jenkins an opportunity to undergo an additional psychiatric evaluation by the doctor of his choice. (Greene Letter 1). Jenkins was not deprived of any liberty or property "without due process of law".

## Americans with Disabilities Act

The Court should consider a potential Americans with Disabilities Act ("ADA"), despite the lack of any formal pleading regarding the claim.

The Defendant acknowledges the possibility of an ADA claim in a footnote, but argues that the complaint "contains no allegations in support of such a claim." Mot. to Dismiss 12 n.9. However, there are facts that can be gathered from the complaint that might support a plausible claim under the ADA.

The ADA defines disability as "A physical or mental impairment that substantially limits one or more major life activities . . . or being regarded as having such an impairment". 42 U.S.C.

11

§ 12102(1)(a-c). The ADA "regarded as" provision was amended effective January 1, 2009 to apply to individuals who have "been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity". 42 U.S.C. § 12102(3)(a). Prior to the amendment, the plaintiff had the burden of proving he was regarded as having a disability as defined by the ADA, and thus prove a perception of impairment of major life activities. See eg., Jacques v. DiMarzio, Inc., 386 F.3d 192, 201 (2nd Cir. 2004).

Title II of the ADA prevents an individual with a disability from being "excluded from participation in or be denied the benefits of the services, programs, or activities" of a governmental agency. 42 U.S.C. § 12132.

The Plaintiff contends he was denied entrance into the shelter of his choice because of a mistaken diagnosis of schizophrenia. (Greene Letter 1). This suggests that the Plaintiff could be alleging that he has been denied a local government service due to his status as an individual who is perceived as having mental disabilities or psychiatric impairment.

The Supreme Court has addressed the issue of segregation of mentally ill as a form of discrimination under the ADA. Olmstead v. Zimring, 527 U.S. 581, 600 (1999). The Olmstead plaintiffs were mentally ill patients who were institutionalized at the psychiatric unit of Georgia Regional Hospital. Id. at 593. The plaintiffs wanted to leave the institution and enter community based treatment. Id. The medical professionals at the hospital concluded the plaintiffs had stabilized and agreed that they should be transferred to the community-based treatment program in order to be integrated into society. Id. Despite this recommendation the plaintiffs remained institutionalized for more than a year because of a lack of appropriate

community placements. Id. They filed a complaint alleging their continued confinement in a mental hospital violated Title II of the ADA. Id.

The Attorney General has issued regulations implementing the ADA and "concluded that unjustified placement or retention of persons in institutions, severely limiting their exposure to the outside community, constitutes a form of discrimination based on disability prohibited by Title II". Id. at 596.

However, the Attorney General has also determined that the ADA did not require changes that "would fundamentally alter the nature of the service, program, or activity". Id. (quoting 28 CFR § 35.130(b)(7)). Justice Ginsburg, writing for a plurality, affirmed the Attorney General's interpretation of the ADA that "unjustified segregation. . . is properly regarded as discrimination based on disability". Id. at 597. However, the court cautioned that the ADA does not justify the wholesale elimination of institutionalization in favor of community-based treatment. Id. The ADA only prevents discrimination against those individuals with a disability who are "otherwise qualified" to receive the benefit. Id. at 601-2. The court noted, "The State generally may rely on the reasonable assessments of its own professionals in determining whether an individual meets the eligibility requirements" of a specific program. Id. at 602. Justice Ginsburg also noted, "Courts normally should defer to the reasonable medical judgments of public health officials". Id. at 602.

Justice Ginsburg also stated that placement in community-based treatment was required only to the extent that such placement could be reasonably accommodated. Id. at 605. The court explicitly noted that it is not, ". . . the ADA's mission to drive States to move institutionalized patients into an inappropriate setting, such as a homeless shelter". Id. The plurality concluded that, under Title II of the ADA, states are required to provide least-restrictive mental health

placement to persons with disabilities "when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with disabilities". Id. at 607.

Unlike the plaintiffs in Olmstead, Jenkins denies that he has a disability. (Greene Letter 1). Jenkins alleges that he is perceived to have a disability (evidenced by his diagnosis of schizophrenia) and that he is being denied placement in a certain type of shelter because of that perception. He argues that he is entitled to be free from discrimination because of his perceived disability in his placement into a shelter.

Following the logic of Olmstead, Jenkins' potential claim is that that he is entitled to be placed in the least restrictive housing consistent with his medical condition; his condition has been misdiagnosed and so he is perceived as having a disability; the result is placement in more restrictive housing than he wants, which isolates him from the community in a way that constitutes discrimination under the ADA.

However, entertaining such a claim would require this Court to stray from the rule articulated in Olmstead that, "Courts normally should defer to the reasonable medical judgments of public health officials". Id. at 602. The language of the plurality in Olmstead implies there may be unusual situations in which deference to the State medical professionals would not be appropriate. However, the facts here alleged do not suggest that this is such a case. Given Jenkins' classification by medical professionals as a schizophrenic, he was not qualified for the less restrictive housing assignment he sought. Despite the fact that the Greene letter describes why Jenkins believes the diagnosis is unreasonable, the Court is required to give deference to the medical judgment of trained professionals. Jenkins could have challenged his diagnosis

14

administratively but he did not; he was offered a new evaluation by the physician of his choice but he has refused to undergo it. Under these circumstances, Jenkins is asking the Court to substitute its (non-existent) medical judgment for that of the trained DHS official who diagnosed him. Without a second opinion (which DHS offered to consider) or more specific allegations in the pleadings, there is no basis for second-guessing the diagnosis of DHS medical professionals.

**Fair Housing Act**

Although a claim under the Fair Housing Act has not been formally pled it is also appropriate to evaluate the possibility of such a claim. In evaluating a motion to dismiss a *pro se* complaint, the court should take into consideration all relevant documents and pleadings, not just the complaint, when determining if a valid claim has been stated. Locicero, 419 F. Supp. 2d at 525.

The Fair Housing Act makes it illegal to "to discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap". 42 U.S.C. § 3604(f). Handicap is defined as "a physical or mental impairment which substantially limits one or more of such person's major life activities, or a record of having such an impairment or being regarded as having such an impairment". 42 U.S.C. § 3602(h).

Based on Jenkins' pleadings and the text of the FHA, it is possible to imply a claim that Jenkins was denied a dwelling because he was regarded as having a mental impairment that substantially limits one or more of his life's activities.

The Second Circuit has not addressed whether a shelter offering free housing to the homeless falls under the Fair Housing Act. One court in this district has discussed this issue: in Anonymous v. Goddard Riverside Community Center, Inc., 1997 WL 475165, No. 96 CIV.

9198, (S.D.N.Y. Jul. 18,1997), the court treated a federally funded residential treatment program

for the mentally ill as a rented dwelling for the purposes of evaluating a motion to dismiss. The

court dismissed the complaint on other grounds and addressed this issue only in a footnote; it

did not need to resolve the issue but cited favorably to cases finding homeless shelters and group

homes were "dwellings". Goddard, 1997 WL 475165, at *5 n.4.

A review of cases from other circuits that address the issue in more detail reveals that

three issues need to be considered: the classification of the shelter as a "dwelling", the existence

of consideration needed to establish "rent", and the meaning of the phrase "otherwise make

unavailable or deny".

### A) Dwelling

The Fair Housing Act defines a dwelling as

> any building, structure, or portion thereof which is occupied as, or
> designed or intended for occupancy as, a residence by one or
> more families, and any vacant land which is offered for sale or
> lease for the construction or location thereon of any such
> building, structure, or portion thereof

42 U.S.C. § 3602(b). This has often been interpreted to include homeless shelters. See

eg., Woods v. Foster, 884 F. Supp. 1169 (N.D.Ill. 1995), Lakeside Resort Enterprises, LP

v. Board of Sup'rs of Palmyra Tp., 455 F.3d 154 (3d. Cir. 2006), Community House, Inc.

v. City of Boise, 490 F.3d 1041, 1044 n.2 (9th Cir. 2007) (rehearing en banc).

Woods v. Foster, a case from the Northern District of Illinois, offers the most in-depth

discussion of whether or not a homeless shelter qualifies as a "residence by one or more

families". 884 F. Supp. 1169 (N.D.Ill. 1995). In Woods, the plaintiffs were women who resided

in a homeless shelter operated by the New Life Outreach Ministries of Chicago under a contract

with the City of Chicago Department of Human Services, which was funded by the United States

Department of Housing and Urban Development. Id. at 1171. The plaintiffs alleged that

16

supervisors of the shelter made unwanted sexual advances and filed a complaint of
discrimination based on sex under the Fair Housing Act. Id. at 1172.

      In determining if the shelter was a "dwelling," the court determined that most courts have
cited the analysis of United States v. Hughes Memorial Home, 396 F.Supp. 544, 548-9 (W.D.Va.
1975), which defined residence as "a temporary or permanent dwelling place, abode or
habitation to which one intends to return as distinguished from the place of temporary sojourn or
transient visit". Courts have continued to look to the Hughes "plain meaning" analysis in
determining what constitutes a dwelling under the FHA. See, Home Quest Mortg. LLC v.
American Family Mut. Ins. Co., 340 F.Supp.2d 1177, 1184 (D. Kan. 2004).

      The court in Woods concluded that the homeless shelter was a temporary dwelling place
and not merely a place of transient visit because the nature of being homeless meant the women
had no other place to go. Also, they demonstrated a clear intent to return to the shelter. Id. at
1174. This was contrasted to a hotel where, after finishing their stay, guests return another
dwelling. Id.

      The Third Circuit, evaluating whether or not a drug and alcohol treatment center
qualified as a dwelling under the FHA, applied a two-part test:

> First, we must decide whether the facility is intended or designed
> for occupants who intend to remain in the facility for any
> significant period of time. Second, we must determine whether
> those occupants would view the facility as a place to return to
> during that period.

Lakeside Resort Enterprises, LP v. Board of Sup'rs of Palmyra Tp., 455 F.3d 154, 158 (3d. Cir.
2006) (internal quotations omitted). The formal two-part test takes into account factors similar
to those considered in the as the Hughes "plain meaning" test. The court reached the conclusion
that the treatment center was a dwelling under the FHA. Id.

The Ninth Circuit has also applied the Fair Housing Act to homeless shelters, although it has not addressed whether all temporary homeless shelters fall within the statute's definition of a "dwelling". Community House, Inc. v. City of Boise, 490 F.3d 1041, 1044 n.2 (9th Cir. 2007) (rehearing en banc). In Community House, the Ninth Circuit reversed the District Court's dismissal of a Fair Housing Act claim against a men's only homeless shelter because the District Court had applied the incorrect test to the discrimination claims made by the plaintiffs. Community House, Inc. v. City of Boise, 468 F.3d 1118, 1123 (9th Cir. 2007). The court initially noted in a footnote that it had "previously applied the Fair Housing Act to homeless shelters". Community House, 468 F.3d at 1123 n.2.

Rehearing the case en banc, the court replaced the footnote with an explanation that the parties did not dispute whether or not the FHA applies to homeless shelters, so the court was not ruling on the issue. Community House, 490 F.3d at 1044 n.2. The court noted in the new footnote that the Community House facility was not mere transient housing, and it had "little trouble concluding" that it qualified as a dwelling under the Fair Housing Act. Community House, 490 F.3d at 1044 n.2. The court further noted that regulations implementing the Fair Housing Act Amendments with respect to disability specifically listed as an example of a dwelling "shelters intended for occupancy as *a residence for homeless persons*". Community House, 490 F.3d at 1044 n.2 (citing 24 C.F.R. § 100.201) (emphasis original).

At least at the pleading stage, prior to the development of any factual record, the homeless shelter to which Jenkins was denied entry could well fall within the definition of dwelling under the FHA. Jenkins is intends to stay at the shelter as long as he can, he and has no other home to go to. No facts pleaded or inferred from the complaint distinguish the New York City shelter from the shelters in Woods, Lakeside, and Community House.

**B) Rent**

The Fair Housing Act prohibits discrimination "in the sale or rental" of a dwelling. 42 U.S.C. § 3604(f)(1). The FHA defines "to rent" as "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. §3602(e). Although a few district courts have held that government grants to homeless shelters constitute consideration and qualify the homeless as renters, I find that argument unpersuasive.

The court in <u>Woods</u> found that the HUD grant paid to the city constituted consideration for the plaintiffs' use of the homeless shelter. 884 F. Supp. at 1175. The court in <u>Goddard</u> similarly treated federal funding as sufficient consideration, albeit in dictum. 1997 WL 475165, at *5 n.4. However, neither court cited any authority for its conclusion. A far more plausible reading of the statute would limit the word "rent" to consideration paid by the person who has the right to occupy the dwelling.

Jenkins seeks a government service. He is not offering any consideration in exchange for a room in the shelter and the government agency that awarded money used to keep the shelter open did not intend to occupy the premises. Therefore, neither Jenkins nor a government agency is a "renter" within the meaning of the FHA.

**C) Otherwise Make Unavailable or Deny**

However, the court in <u>Woods</u> held that no payment of rent by the homeless plaintiffs was necessary, because the FHA also makes it illegal to "otherwise make unavailable or deny a dwelling to any person". 884 F. Supp at 1175 (quoting 42 U.S.C. 3604(a)).

The <u>Woods</u> court cited a Seventh Circuit case, <u>N.A.A.C.P. v. American Family Mutual Insurance Co.</u>, 978 F.2d 287, 297-3601 (7th Cir. 1992), <u>cert. denied</u>, 508 U.S. 907 (1993), for the proposition that the "otherwise make unavailable" clause expanded the scope of the Fair

Housing Act to include actions other than refusal to rent or sell property. American Family applied the "otherwise make unavailable" clause to the discriminatory refusal to sell homeowners insurance, which had the effect of making a dwelling unavailable to the plaintiff. Id. Most courts that have addressed the issue of whether or not the "otherwise make unavailable" clause expands the FHA beyond renting and selling have concluded that it does. See, National Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America, 208 F.Supp.2d 46 (D.D.C. 2002).

However, the court in Woods was relying on § 3604(a) of the FHA, which applies to discrimination based on sex. Here the Plaintiff would have to rely on § 3604(f), which applies to discrimination based on handicap. There is, it turns out, a crucial difference in the language of the two provisions, one that makes the analysis in Woods inapplicable to the present case. Section 3604(a) makes it illegal "to otherwise make unavailable or deny, a dwelling *to any person*". 42 U.S.C. 3604(a) (emphasis added). Section 3604(f) makes it illegal "to otherwise make unavailable or deny, a dwelling *to any buyer or renter*". 42 U.S.C. 3604(f) (emphasis added). We have already established that under any logical construction of § 3604(f), Jenkins is not a "renter," and he most certainly is not a "buyer."

There is thus a critical difference between § 3604(f), which applies to discrimination on the basis of handicap, and § 3604(a), which applies to all other FHA discrimination. The "otherwise make unavailable" clause is narrower in cases of discrimination on the basis of handicap; § 3604(f) requires that a handicapped person be either a renter or a buyer in order to bring a Fair Housing Act claim. Reading § 3604(f) to expand the "otherwise make unavailable" clause beyond renters and buyers would ignore the fact that when Congress drafted the FHA disability amendments, it chose to apply a different (and narrower) standard to individuals who

20

are perceived to have a disability.  The Ninth Circuit has noted this distinction and upheld the

dismissal of a claim brought under § 3604(f) holding that it "employs the terms 'renter or buyer',

suggesting that, at the very least, [the plaintiff] must allege that he is a prospective buyer to

achieve standing".  Ricks v. Beta Development Co., 92 F.3d 1193, No. 95-15335, 1996 WL

436548, at *1 (9th Cir. Jul. 10, 1996) (unpublished table opinion).

     Thus, the "otherwise make unavailable" clause may expand the prohibited activities

under § 3604(f) beyond simply renting and selling but it does not expand the class of individuals

who are protected from discrimination on the basis of a handicap beyond renters or buyers.

Even if an argument could be made that Jenkins was denied "housing" by being excluded from

the shelter he prefers, he is not a buyer or a renter of any property and so has no claim under the

differently-worded "otherwise make unavailable" clause of § 3604(f).

**Article 78**

     It is clear from Jenkins' pleadings and the letter written on his behalf that Jenkins

contends that DHS' the initial diagnosis of schizophrenia was incorrect.  For example, Jenkins

makes the following allegations: "DHS and MICA refused to review the facts on the in-take

evaluation" (Compl. 4); DHS did not offer "arbitration on the evaluation" (Id.); "An

asymptomatic client was assigned without cause to MICA" (Response 1); "Mr. Jenkins'

psychiatric evaluation does not support a diagnosis of schizophrenia" (Greene Letter 3).  A

challenge to the agency's determination falls squarely under Article 78 of the New York Civil

Practice Law and Rules, which provides a method for challenging an agency decision that a

plaintiff believes "was arbitrary and capricious or an abuse of discretion".  CLPR § 7803(3).

     Any such claim is time barred, however, because an Article 78 action "must be

commenced within four months after the determination to be reviewed becomes final and

21

binding upon the petitioner". CPLR § 217(1). Seeking reconsideration of an agency decision does not extend the statute of limitations unless the agency is statutorily obligated to reconsider. Todd v. New York City Housing Authority, 262 A.D.2d 202, 202,  692 N.Y.S.2d 327, 327 (N.Y.A.D. 1 Dept. 1999). The court has not been apprised of any such statutory obligation.

The determination that Jenkins challenges was made in August of 2007. It became final and binding immediately. He was denied entry into the general homeless shelter population at that time. (Greene Letter 1). That is more than 4 months prior to the commencing of this action on October 3, 2008.

DHS offered to reconsider Jenkins' placement sometime before June 9, 2008. Id. According to Greene, DHS indicated the diagnosis was conducted under the authority of 18 NYCRR § 491.4(c) which allows shelters to conduct interviews to determine the needs of potential residents and determine if the shelter is adequate to meet those needs. The regulation does not have any mandatory reconsideration provision and thus the offer to reconsider his placement does not extend the statute of limitations.

## CONCLUSION

All potential claims having been analyzed and dismissed with prejudice, the Clerk of the Court is directed to enter judgment for the Defendant's and close the file. This constitutes the decision and order of the Court.

Dated: July 7, 2009

U.S.D.J.